IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-90-100-CR





ISAAC G. HERNANDEZ,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT



NO. 38,401, HONORABLE JACK W. PRESCOTT, JUDGE



 





PER CURIAM



 A jury found Isaac G. Hernandez guilty of the offense of
aggravated sexual assault of a child of less than 14 years of age.
The court assessed punishment at 20 years imprisonment. Tex. Pen.
Code Ann. § 22.021 (1989). We will affirm the judgment of
conviction.

 In one point of error, appellant contends that the
evidence was insufficient to support the conviction because there
were too many conflicts in the testimony for the jury to find him
guilty beyond a reasonable doubt.

 At the time of trial the complaining witness, appellant's
daughter, was eleven years old and in the fourth grade. She said
that the previous summer she told her mother that something bad had
happened to her. Her mother took her to the Department of Human
Services and to the police and she told them that her father had
been doing bad things to her. She said that he had touched her on
her "private part" and had her touch his "private part"; that he
had touched her with it and attempted to put it in her "behind." 
She said that he had put his "private" in her mouth; that she put
pillows over her face so that she wouldn't see; that he would move
it when he had it in her mouth; that something came out of it after
which the appellant would clean them both up. She said that her
father had made her watch an X-rated movie on videotape. She did
not tell anyone sooner because she was scared. She said that she
now lived with an aunt in Pharr; that she had talked to her father
occasionally since telling about the molestation; and, that she
still loved him.

 On cross-examination, complainant was asked about her
uncle, Juan Castillo. She said that he had touched her "where he
wasn't supposed to," prior to appellant's molestation. She did not
remember watching videos with Juan. She said that he had put a
knife against her neck and threatened to kill her family if she
told. 

 She said that she had only watched the "dirty" movie when
appellant showed it to her. She denied asking her baby sitter to
show it to her and denied saying that she watched it all the time. 
She said that her father did have some "dirty" magazines in their
home but denied looking at them and being caught by her mother. 
She also denied telling a neighbor boy that she had seen her mother
and father "humping."

 The complaining witness testified that her father did
"something" to her on two days when they lived in the Valley with
her grandparents. She was then asked to look at some papers which
she identified as a statement she had made to the police in which
she had said that "it" happened almost every day in the Valley,
which she did not remember saying. She denied saying to appellant,
while her mother was listening, that the charge was not true;
denied telling her aunt that for fifty dollars she would say the
charge was not true; and denied telling anyone that she was going
to make some money off this. She admitted that she had told a lie
before. On redirect, she said that she felt "pressure" in her home
because of the family living in the Valley instead of living with
appellant. She said that she loved appellant and did not want him
to go to jail.

 Dr. Douty, a pediatrician at Scott and White Hospital,
testified that usually no physical findings are associated with
sexual abuse. Instead, reliance is placed upon the historical
information given by the victim. The child told him that her
father had manipulated her vagina with his finger, attempted to put
his penis in her rectum, and made her perform oral sex. He found
no evidence of penetration of the child's vagina or rectum, but did
find bruises on the child's thighs which were consistent with the
victim's complaint of pain resulting from her father's putting his
knees on her thighs. She was very shy, which was consistent with
sexual abuse victims. The State presented two of the child's
teachers, who said she was immature and a bit slow but tried hard
and would not lie to get herself out of trouble.

 Other witnesses were called who contradicted various
aspects of the child's story. Her mother, Maria Hernandez, said
that when the child told her about the events the child was upset. 
She went to a priest, then to Child Protective Services. She said
that the matter had caused difficulties and fights in her home. 
She said that she and the other children were upset at being
separated from appellant. She said that the child at one point
said that it didn't happen but then changed the story back and said
that it did happen. She said that the bruises on the child's
thighs resulted from an injury suffered during an emergency drill
at school.

 Appellant's other witnesses included a baby sitter who
testified that the child told her that she watched a sexually-explicit videotape "all the time" and the baby sitter had to take
the tape away from the child. A neighbor boy testified that the
child told him what "humping" was, and said that she had seen her
parents doing it. A neighbor testified that he had to break up
several fights between appellant and his (appellant's) wife, which
caused the children to be upset. He had seen the videotape in
question and said that it had explicit scenes of oral sodomy and
ejaculation on the stomach. The child's aunt testified that when
she talked to the child, the child said that if the aunt would give
her fifty dollars she wouldn't say anything. She said that the
child told her about Juan Castillo and his threats; that the child
told her that she had seen a hard-core movie. Another relative
said that the child spontaneously told her that the appellant had
not done anything, although she also said there was family pressure
on the child. 

 Appellant testified that there had been violence between
him and his wife in front of the children; that the videotape
showed the same acts as those that the child described as happening
to her; and that in one telephone conversation between him and his
wife, he said the child told him the allegation wasn't true. He
denied committing the offense. 

 When the issue is the sufficiency of the evidence to
support a criminal conviction, the reviewing court must view the
evidence in the light most favorable to the verdict and determine
if any rational trier of fact could have found the defendant guilty
beyond a reasonable doubt. This is done by considering all the
evidence in the case, resolving all conflicts and drawing all
reasonable inferences in favor of the verdict and then determining
whether there is sufficient evidence. Jackson v. Virginia, 443
U.S. 307, 319 (1979); Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Cr. App. 1988). The trier of fact is the sole judge of the
credibility of the witnesses, and may believe or disbelieve all or
any part of any witness's testimony. Williams v. State, 692 S.W.2d
671, 676, (Tex. Cr. App. 1984). 

 The jury had the opportunity to observe all of the
witnesses. From the record, it is clear that the child often was
confused, hesitated in answering, and had to be repeatedly
requested to answer questions aloud, rather than by shaking her
head. The jury would not have been acting irrationally to have
believed the child's version of events, however, understanding that
perhaps she had been traumatized by them and so was not the most
poised of witnesses.

 We overrule the point of error and affirm the judgment of
conviction.



[Before Justices Powers, Aboussie and Kidd]

Affirmed

Filed: January 23, 1991

[Do Not Publish]